IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARIA MORENO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SONIC DRIVE-IN; BRAD STEPHENS; and JOHN DOES I–X,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00372-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

This case arises out of an employment dispute. Before the court is Defendants Sonic Drive-In and Brad Stephens's Renewed Motion to Dismiss (Motion).[1] For the reasons explained below, the court GRANTS IN PART and DENIES IN PART the Motion.

## BACKGROUND[2]

Plaintiff Maria Moreno, a Utah resident, is a 48-year-old Hispanic woman from Mexico.[3] Sonic is a national fast-food chain that employed Moreno for over twenty-two years, most recently as General Manager at one of its Utah locations.[4] Stephens was Moreno's supervisor during the acts giving rise to this lawsuit.[5]

---

[1] Dkt. 36, *Renewed Motion to Dismiss* (*Motion*).

[2] Because this case is before the court on a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court further relies on exhibits attached to the Amended Complaint because they are central to Moreno's claims and their authenticity is not disputed. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[3] Dkt. 29, *Amended Complaint* ¶¶ II.1, IV.17, 35.

[4] *Id.* ¶ II.1–2. Sonic Drive-In is a dba of Mach 1 Foods, LLC. *See Motion* at 1. Moreno initially purported to sue both Sonic and Mach 1 Foods but has since revised her pleading to recognize that they are one entity. *Compare* Dkt. 2, *Complaint and Jury Demand*, *with Amended Complaint*.

[5] *Amended Complaint* ¶¶ II.3, IV.3.

While at Sonic, Moreno consistently performed well and was a top ranked employee.[6] But at some point in 2023, Stephens became Moreno's supervisor.[7] Several instances of discriminatory conduct toward Hispanic workers at Sonic, including Moreno, followed. Stephens "would not acknowledge" Hispanic employees in meetings, required them to "work harder and longer" than white employees, and once said that Moreno "was a wom[a]n who doesn't know how to do anything."[8] He raised his voice and used aggressive language toward Moreno.[9] An employee overheard Stephens say that "he does not know how a Hispanic woman like [Moreno] ever got the job of being a general manager."[10] In addition, Stephens and Sonic's operations manager "would have the Hispanics clocking [in] under two different names just so [Sonic] did not have to pay them overtime."[11] During her employment at Sonic, Moreno "was denied overtime pay, paid vacation, and paid time off, despite regularly working more than 40 hours per week."[12]

Moreno eventually discovered Stephens was improperly reducing or removing employee hours, which Moreno believed violated federal and state wage and hour laws.[13] On January 5, 2024, she reported this to Sonic management by sending them a text message.[14] Around that

---

[6] *Id.* ¶¶ IV.21–22.

[7] *Id.* ¶ IV.3.

[8] Dkt. 29-1, *Statement of Maria Moreno* at 21.

[9] *Id.* at 20.

[10] *Id.* at 21.

[11] *Id.*

[12] *Amended Complaint* ¶ IV.19.

[13] *Id.* ¶¶ IV.4, 8.

[14] *Id.* ¶¶ IV.4–5. The text reads as follows: "Hello All, I am writing this long message due to some concerns I have. Some of my team members had brought to my attention some inconsistencies, about there times punches been deleted This is been going on for awhile, now I have been making sure they get paid what they work, but this needs to stop. This is coming from above. Not sure who it is that's why I'm writing this. As we all know this is a legal matter, which I don't want to be involved on, im all about honesty and integrity. I hope I get some answers and actions taken on, on this matter please let me know your thoughts. Respectfully, Maria Moreno." *Id.* ¶ IV.5.

same time, Moreno also forwarded to management messages from two other employees alleging improper deletion or manipulation of hours worked.[15] Moreno alleges Defendants "targeted [] Hispanic staff, with white employees not subjected to similar scrutiny or penalties."[16]

Less than three weeks later, on January 22, 2024, Moreno's employment was terminated.[17] Moreno received multiple reasons for her firing which, in her view, made it appear that Stephens was "looking for a reason to get rid of [her]" by manufacturing pretextual reasons for her termination.[18] Stephens told Moreno that she "had no control over [her] team because sometimes they would clock in late."[19] He also stated she was "disobedient," and falsely claimed Moreno allowed another employee to clock in who was not present for work.[20]

On January 15, 2024—just over a week after she raised concerns about allegedly improper pay practices—Sonic's operations manager accused her of closing the store without permission.[21] But Moreno received permission from Stephens in late 2023 to close the Sonic location where she worked at 10:00 PM instead of 11:00 PM due to low sales volume.[22] While Stephens denied giving Moreno permission to do so,[23] Moreno provides a text message she

---

[15] *See id.* ¶¶ IV.6–15.

[16] *Id.* ¶ IV.25; *see also id.* ¶ IV.23 ("[Moreno] raised multiple concerns about unfair pay and racial treatment, particularly toward Hispanic employees, such as discrepancies in pay, extra unpaid hours, and discriminatory scheduling.").

[17] *Id.* ¶ IV.24.

[18] *Statement of Maria Moreno* at 21.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 20.

[22] *Id.*

[23] *Id.*

3

received from Stephens stating, "[the operations manager] changed the hours, you can officially close at 10 now."[24]

Moreno alleges the true reason behind her firing was either discrimination or retaliation for raising concerns about allegedly unlawful pay practices. According to Moreno, "[j]ust prior" to her firing, "Defendant also told her she was too old for that job,"[25] and a Sonic employee stated Stephens said, "he had [Moreno] fired because he was upset that [she] had discovered what he was doing."[26]

On May 9, 2025, Moreno brought this action after receiving a right to sue letter from the Equal Employment Opportunity Commission (EEOC).[27] After Defendants filed a motion to dismiss,[28] she filed an Amended Complaint on October 12, 2025.[29] Moreno's Amended Complaint asserts at least seven claims for relief: (1) unlawful discrimination based on sex and national origin under Title VII of the Civil Rights Act of 1964; (2) unlawful retaliation under Title VII; (3) failure to pay overtime wages in violation of the Fair Labor Standards Act (FLSA); (4) wrongful termination in violation of Utah common law; (5) unlawful discrimination under the Utah Antidiscrimination Act (UADA); (6) failure to pay overtime and provide required benefits under the Utah Payment of Wages Act; and (7) breach of the implied covenant of good

---

[24] Dkt. 29-1 at 10 (screenshot of text message from Brad Stephens).

[25] *Amended Complaint* ¶ IV.35.

[26] *Statement of Maria Moreno* at 21.

[27] *Complaint and Jury Demand*; *Amended Complaint* ¶¶ III.1–2.

[28] Dkt. 28, *Motion to Dismiss*.

[29] *Amended Complaint*.

faith and fair dealing.[30] The parties dispute whether Moreno has brought a claim under the Age Discrimination in Employment Act (ADEA).[31]

On December 9, 2025, Defendants renewed their Motion to Dismiss.[32] Moreno filed an Opposition,[33] and Defendants failed to timely file a Reply.[34]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendants may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."[35] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]

"Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests."[38] That is, while "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory . . . technical fact pleading is not required."[39] To be sure, the court will not accept as true

---

[30] *Id.* at 7–10.

[31] *See Motion* at 8–9; Dkt. 37, *Plaintiff's Memorandum in Opposition to Defendants' Renewed Motion to Dismiss* (*Opposition*) at 2, 15.

[32] *Motion*.

[33] *Opposition*.

[34] *See Docket*.

[35] Fed. R. Civ. P. 12(b)(6).

[36] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[37] *Id.* (citing *Twombly*, 550 U.S. at 556).

[38] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555) (citation modified).

[39] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citation modified).

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[40] "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[41] When considering a Rule 12(b)(6) challenge, the court views the evidence "in the light most favorable to the nonmoving party"[42] and evaluates whether a complaint "taken as a whole" entitles a plaintiff to relief.[43]

## ANALYSIS

Defendants argue each of Moreno's claims fail. The court address each in turn.

### I. Moreno Plausibly Alleges a Title VII Unlawful Discrimination Claim.

"Title VII makes it unlawful to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[44] To prove a violation of Title VII, a plaintiff must provide either "direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*."[45] Moreno appears to concede the *McDonnell Douglas* standard applies here.[46] Under this standard, a plaintiff must "first prove a prima facie case of discrimination."[47] Generally, to establish a prima facie case, "a Title VII plaintiff bringing a claim of employment discrimination must plausibly allege: (1) she is a member of a protected class, (2) she suffered an adverse

---

[40] *Iqbal*, 556 U.S. at 678.

[41] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citation omitted).

[42] *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation omitted).

[43] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173 (10th Cir. 2010) (citing *Twombly,* 550 U.S. at 554–56).

[44] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e–2(a)(1)) (citation modified).

[45] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (quoting *Khalik*, 671 F.3d at 1192).

[46] *Opposition* at 8–10.

[47] *McNellis*, 116 F.4th at 1137 (quoting *Khalik*, 671 F.3d at 1192).

employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination."[48] "Alleging the employer treated similarly situated employees more favorably is one method by which a plaintiff can plead circumstances that give rise to an inference of discrimination."[49] Here, elements one and two are undisputed: Moreno is Hispanic and was terminated.[50]

Defendants argue Moreno fails to plausibly allege element three because the Amended Complaint includes only "generalized statements [that] do not supply any factual basis from which discriminatory motive can be inferred," fails to identify any "similarly situated non-Hispanic or male comparator who was treated more favorably in comparable circumstances," and "does not allege that any decisionmaker, including whoever made the decision to terminate her employment, made discriminatory comments or acted with bias related to her national origin or sex."[51] Defendants rely on *Khalik v. United Air Lines*, where the Tenth Circuit concluded a plaintiff had failed to provide sufficient factual allegations to state a plausible discrimination claim.[52]

This case is not like *Khalik*. There, the Tenth Circuit listed ways in which the plaintiff's pleading failed to provide specific facts: among others, the pleading omitted (1) "details about how Defendant treated [the Arabic and Muslim plaintiff] compared to other non-Arabic or non-Muslim employees," (2) "the reasons Defendant gave her for termination and why in her belief

---

[48] *Id.* at 1139 (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)) (citation modified). The parties ask the court to apply the standard articulated in *Khalik*. *See* Motion at 6–7; Opposition at 8–9. The court declines to do so given the Tenth Circuit's more recent instruction in *McNellis*. *McNellis*, 116 F.4th at 1139 & n.13 (discussing the Tenth Circuit's differing formulations of the elements of Title VII claims and settling on a "'general' recitation of the elements").

[49] *McNellis*, 116 F.4th at 1141 (citation modified).

[50] *Amended Complaint* ¶¶ IV.16–19.

[51] *Motion* at 6–7.

[52] *Khalik*, 671 F.3d at 1192–94.

7

those reasons were pretextual," and (3) "who she complained to about the discrimination, when she complained, and what the response was."[53] Here, Moreno alleges (1) Stephens "would not acknowledge" Hispanic employees in meetings, required them to "work harder and longer" than white employees, and said that "he does not know how a Hispanic woman like [Moreno] ever got the job of being a general manager;"[54] (2) Defendants manufactured multiple pretextual reasons for her firing;[55] and (3) her firing occurred shortly after she reported wage and hour manipulation targeted only at Hispanic employees.[56] The court concludes these allegations are sufficiently specific to state a plausible Title VII discrimination claim.[57]

## II. Moreno Plausibly Alleges a Title VII Unlawful Retaliation Claim.

Under Title VII, it is "unlawful for an employer to retaliate against an employee because she has opposed" an employment practice made unlawful by the statute.[58] To state a retaliation claim, a plaintiff "must plausibly allege (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[59] "Protected opposition can range from filing formal charges to voicing informal complaints to superiors."[60] Temporal proximity alone may establish a prima

---

[53] *Id.* at 1194.

[54] *Statement of Maria Moreno* at 21.

[55] *See id.* at 20–21.

[56] *Amended Complaint* ¶¶ IV.24–25.

[57] Because Moreno has established at least one theory of liability for her single Title VII unlawful discrimination claim, the court need not address the parties' sex discrimination arguments. *See, e.g.*, *FTC v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1245–46 (D. Utah 2019) (explaining challenges to parts of a claim, as opposed to a claim in its entirety, are appropriate on summary judgment, not a motion to dismiss) (citations omitted).

[58] *McNellis*, 116 F.4th at 1142 (quoting *Khalik*, 671 F.3d at 1192) (citation modified).

[59] *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (quoting *Khalik*, 671 F.3d at 1193) (citation modified).

[60] *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted).

facie showing of causation.[61]  For example, in *Metzler v. Fed. Home Loan Bank of Topeka*, the Tenth Circuit held a four-to-six-week period between the protected activity and materially adverse action sufficient to establish a causal connection.[62]

Defendants argue Moreno has failed to state a plausible retaliation claim because the Amended Complaint "does not allege she engaged in any activity protected by Title VII" and "fails to plead facts supporting any causal connection between protected activity and her termination."[63]  Defendants also contend that Moreno "provides no evidence" supporting her allegations, arguing that "[s]he just says it happened in hopes that the court will take her wor[d] for it."[64]

In Opposition, Moreno argues she has alleged that she "repeatedly complained" to her employer "about unfair pay, underpayment, and disparate treatment targeting Hispanic workers in her store, explicitly framing the issues as illegal and tied to the treatment of a protected group."[65]  Moreno further argues a seventeen-day period between her informal complaint and her firing is sufficient to give rise to an inference of causality.[66]

As an initial matter, Defendants are incorrect that Moreno needed to provide evidence in her pleading; the court must accept as true her allegations that have sufficient factual enhancement.[67]  And here, Moreno's allegations go well beyond conclusory assertions: she

---

[61] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citations omitted).

[62] 464 F.3d 1164, 1171–72 (10th Cir. 2006) (citation omitted).

[63] *Motion* at 5, 6.

[64] *Id.* at 6.

[65] *Opposition* at 11 (citing *Amended Complaint* ¶¶ IV.4–6, 15, 23–25, 30–34).

[66] *Id.* at 11–12.  The court notes Moreno fails to provide legal authority for this argument.  *See id.*  However, because Moreno cites *Metzler*, which cites *Anderson*, the court finds it proper to consider the argument.

[67] *See Iqbal*, 556 U.S. at 678; *Sec. Benefit Life Ins. Co.*, 63 F.4th at 1275 (citation omitted) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." (citation omitted)).

provides detailed allegations including the dates and contents of her communications with her employer about the alleged discrimination.[68] Further, as a matter of law, the temporal proximity between Moreno's alleged informal complaints and her firing is sufficient to establish an inference of causality between her protected activity and the materially adverse action. Because Moreno has done more than provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,"[69] the court finds she has adequately pleaded a Title VII retaliation claim.

### III. Moreno Plausibly Alleges a Utah Antidiscrimination Act (UADA) Claim.

The court now turns to Moreno's UADA claim.[70] The court agrees with the parties that UADA claims are analyzed under the same standards as Title VII claims.[71] Accordingly, because the court has found Moreno has adequately pleaded her Title VII claims, her UADA claim survives as well.

### IV. Moreno Plausibly Alleges a Fair Labor Standards Act (FLSA) Claim.

"The facts required to prove an FLSA overtime claim are (1) that the employee worked more than 40 hours in a single workweek and (2) that the employer failed to pay overtime for the time worked in excess of 40 hours."[72]

---

[68] *See Amended Complaint* ¶ IV.23 ("She raised multiple concerns about unfair pay and racial treatment, particularly toward Hispanic employees, such as discrepancies in pay, extra unpaid hours, and discriminatory scheduling."); *id.* ¶ IV.24 ("[A]fter reporting grave issues with underpayment and non-payment of overtime to her supervisor, Brad Stephens, she faced . . . a sudden firing on January 22, 2024—which was done . . . solely to retaliate against her for insisting Defendants comply with . . . anti-discrimination laws, both state and federal . . . ."); *id.* ¶ IV.25 ("This pattern of mistreatment was targeted at Hispanic staff, with white employees not subjected to similar scrutiny or penalties . . . ."); *see also Statement of Maria Moreno* at 20–21.

[69] *Iqbal*, 556 U.S. at 678.

[70] Moreno styles this as a single claim despite it seeking relief for unlawful discrimination and retaliation. *See Amended Complaint* at 9.

[71] *See Motion* at 12; *Opposition* at 14 & n.1; *Gottling v. P.R. Inc.*, 61 P.3d 989, 995 (Utah 2002) ("The UADA was modeled after Title VII." (citation modified)).

[72] *Knutson v. Sec. Nat'l Mortg. Co.*, No. 2:25-CV-00119-JNP-CMR, 2025 WL 3268469, at *4 (D. Utah Nov. 24, 2025).

Defendants argue Moreno's FLSA claim fails because she did not plead that she worked over forty hours in a given week.[73] Not so. Moreno alleges she "was denied overtime pay . . . despite regularly working more than 40 hours per week."[74] Moreno also alleges her "[pay]checks showed [she] was working 86 hrs biweekly when [she] was actually working 110-120."[75] These allegations are sufficient to establish that she was denied overtime pay for at least one workweek, which is all she needed to plead. Accordingly, Moreno's FLSA claim survives.

V. **Moreno Does Not Plausibly Allege an Age Discrimination in Employment Act (ADEA) Claim.**

An unlawful age discrimination claim under the ADEA requires a plaintiff to "prove that his or her discharge was motivated, at least in part, by age."[76] To make out a prima facie case, a plaintiff must "show they (1) are a member of the class protected by the ADEA, (2) suffered an adverse employment action, (3) were qualified for the employment position at issue, and (4) were treated less favorably than others not in the ADEA protected class."[77]

Defendants argue Moreno has failed to plead a claim for age discrimination.[78] The court agrees, for several reasons. First, a complaint must "give the defendant fair notice of what the claim is."[79] But it is not clear from Moreno's Amended Complaint that she intended to bring an ADEA claim. The Complaint cites the ADEA once in its jurisdiction section.[80] Unlike her

---

[73] *Motion* at 9–10.

[74] *Amended Complaint* ¶ IV.19.

[75] *Statement of Maria Moreno* at 22.

[76] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).

[77] *Roberts v. Winder*, 16 F.4th 1367, 1384 (10th Cir. 2021) (citation omitted).

[78] *Motion* at 8–9.

[79] *Smith*, 561 F.3d at 1104 (citation omitted).

[80] *See Amended Complaint* at 1.

seven other causes of action, Moreno does not break out an age discrimination or ADEA claim as a claim for relief.[81]

Second, even assuming Moreno brought an ADEA claim, her Opposition fails to engage with the applicable legal standard by failing to identify sufficient allegations to make out a prima facie case. She alleges: (1) "Defendants discriminated against Plaintiff based on sex, national origin, and possibly age (if Plaintiff is 40 or older);"[82] (2) just before she was fired, "Defendant also told her she was too old for that job (she is forty-eight years old);"[83] (3) "[a]s a direct result of her age, being older than forty, Defendants fired Mrs. Moreno;"[84] and (4) "[w]hen fired, she was invidiously told by Defendants (based on her age, race, and whistle-blowing) that she was trespassed from the premises—something that departing white and non-Hispanic employees were never told."[85] These allegations are insufficient to establish the fourth prong of the test because there are no allegations related to whether others not in the ADEA protected class were treated differently. Accordingly, the court finds Moreno has failed to adequately plead an ADEA claim.

## VI. Moreno Does Not Plausibly Allege a Wrongful Termination Claim.

While employment in Utah is generally at-will, the presumption of validity extended to an employer's decision to terminate an employee may be overcome by demonstrating "a violation of a clear and substantial public policy."[86] Under Utah law, "a public policy is clear

---

[81] *See id.* at 7–10.

[82] *Id.* at 9.

[83] *Id.* ¶ IV.35.

[84] *Id.* ¶ IV.36.

[85] *Id.* ¶ IV.38.

[86] *Hansen v. Am. Online, Inc.*, 96 P.3d 950, 952 (Utah 2004) (quoting *Fox v. MCI Commc'ns Corp.*, 931 P.2d 857, 859 (Utah 1997)); *see also Cabeness v. Thomas*, 232 P.3d 486, 508–09 (Utah 2010) (employee has the burden to demonstrate public policy exception applies).

only if plainly defined by legislative enactments, constitutional standards, or judicial decisions," and it is substantial if it is "of overarching importance to the public as opposed to the parties only" and "the public interest is so strong and the policy so clear and weighty that we should place the policy beyond the reach of contract."[87]  Such policies include: "(i) refusing to commit an illegal or wrongful act, such as refusing to violate the antitrust laws; (ii) performing a public obligation, such as accepting jury duty; (iii) exercising a legal right or privilege, such as filing a workers' compensation claim; or (iv) reporting to a public authority criminal activity of the employer."[88]

Defendants argue Moreno has failed to plead a plausible claim because (1) she has failed to "identify a specific statutory or constitutional provision that expresses a clear and substantial public policy," and (2) her internal complaints to her employer are insufficient to implicate a public policy under *Fox v. MCI Communications Corporation*.[89]  In Opposition, Moreno argues she has alleged her firing is tied to Defendants' "compliance with the FLSA and anti-discrimination laws," and "reporting systemic underpayment and wage theft implicates a substantial public policy embedded in both federal and Utah statutes protecting workers' rights to be paid lawfully."[90]  However, Moreno fails to support these arguments with legal authority.[91]

While the court is skeptical that firing Moreno for reporting allegedly discriminatory and illegal acts does not violate Utah public policy, "a party forfeits an issue it does not support with legal authority or argument."[92]  Here, Defendants cited several cases in support of their argument

---

[87] *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 950 (Utah 2006) (citation modified).

[88] *Hansen*, 96 P.3d at 952 (citation omitted).

[89] *Motion* at 10–11; *see also* 931 P.2d at 859.

[90] *Opposition* at 13–14 (citation modified).

[91] *See id.*

[92] *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (citation modified).

that Moreno failed to meaningfully engage with in Opposition by explaining why they do not apply in this circumstance. Nor does Moreno cite any legal authority for the proposition that her allegations "implicate clear statutory mandates requiring lawful payment of wages and mirror the kind of whistleblowing conduct Utah courts have recognized as protected."[93] Accordingly, the court finds Moreno has failed to plead a wrongful termination claim.

### VII.  Moreno Plausibly Alleges Claims Asserted in the Alternative.

While Defendants seek to dismiss Moreno's Amended Complaint in its entirety, Defendants fail to address Moreno's claim under the Utah Payment of Wages Act and her claim for breach of the implied covenant of good faith and fair dealing.[94] Moreno appears to assert these claims in the alternative to her statutory claims,[95] which is permissible under Federal Rule of Civil Procedure 8.[96] The court has "no obligation to sua sponte construct an argument" that a litigant has "failed to raise on [its] own behalf."[97] Accordingly, the court declines to dismiss these claims.

### CONCLUSION

For the reasons explained above, the court GRANTS IN PART and DENIES IN PART the Motion to Dismiss.[98] The court GRANTS the Motion with respect to Moreno's ADEA and wrongful termination claims and DENIES the Motion with respect to all of Moreno's other claims.

---

[93] *Opposition* at 14.

[94] *See generally Motion*; *Amended Complaint* at 9–10.

[95] *See Amended Complaint* at 9–10; *Opposition* at 15 ("These [the Utah Payment of Wages Act and implied covenant] claims are pled in the alternative [to the wrongful termination claim].").

[96] *See Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 935 (10th Cir. 2024).

[97] *Lebahn v. Owens*, 813 F.3d 1300, 1308 (10th Cir. 2016) (citation omitted).

[98] Dkt. 36.

SO ORDERED this 9th day of February, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge